FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2022-1734
_____

ANDREW WEBER,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____


On appeal from the Circuit Court for Leon County.
Kevin J. Carroll, Judge.


September 11, 2024


B.L. THOMAS, J.

    Appellant appeals an order denying his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We affirm.

    Late one evening in December 2016, a motor scooter occupied by Stanley Chambliss and Adrian Foushee pulled onto Apalachee Parkway in Tallahassee. Chambliss, the owner of the scooter, later testified that Foushee was driving that night, but forensic evidence indicated that Chambliss, whose license was then suspended, was actually driving. The scooter pulled out in front of a Pontiac Grand Prix sedan being driven by LaDonna Cain, who was going between 40 and 45 miles per hour. Appellant was driving behind Cain in a Ford F-150 truck. Cain later testified that the truck was driving at

a safe distance behind her but that when the scooter pulled out in front of her, she estimated it to be going perhaps only 25 miles per hour. She was gaining on the scooter, so she got into the left lane and passed it. Cain later testified that when she maneuvered to pass the scooter, she had a feeling that an accident would happen because the truck would not be able to stop in time.

Shortly after Cain passed the scooter, she heard a loud crash. She looked in her rearview mirror and saw the scooter pinned under the truck with sparks flying. After five to ten seconds, she saw that the truck was moving again and appeared to be making a U-turn with the scooter still underneath. Cain parked, exited her vehicle, and approached the crash scene. When she got there, she saw the scooter still underneath the truck and a body in the intersection. She did not see anyone inside the truck.

The crashed vehicles were on fire when emergency services arrived. The responding officers first contained the fire, and about fifteen to twenty minutes after their arrival, they discovered Appellant in a nearby parking lot sitting on the curb behind a line of shrubbery. He had an injured arm and was exhibiting signs of intoxication. Appellant said that he thought he hit a trash bag or some balloons in the road. Appellant said the same thing to his emergency room doctor at the hospital. His blood was drawn there, and he had a blood alcohol level of 0.325.

Foushee was dead at the crash scene when responders arrived. Chambliss was hospitalized for a few days for his injuries. His blood alcohol was 0.204. Police did not perform a traffic investigation concerning the crash because they did not believe speed contributed to it.

Appellant was charged with DUI manslaughter, DUI causing serious bodily injury, leaving the scene of a crash involving death, and leaving the scene of a crash involving serious bodily injury. At trial, Appellant's defense to the DUI counts was that the accident was unavoidable, and his defense to the leaving the scene counts was that he did not have actual or constructive knowledge that the accident involved death or serious bodily injury. The defense focused on the speeds at which the vehicles involved were travelling, the fact that the scooter had a single-bulb taillight two

feet off the ground, Cain's feeling that Appellant's truck would not be able to avoid the scooter in time, and the expert testimony of two forensic engineers that a normal, unimpaired driver in Appellant's position would not have sufficient reaction time under the circumstances to notice the danger and change lanes in time to avoid the scooter.

During the charging conference, the trial judge sua sponte stated that he was adding the voluntary intoxication instruction to the jury instructions. This instruction states that "[e]vidence of a defendant's voluntary intoxication may not be taken into consideration to show that he lacked the specific intent to commit any crime." As the basis for this decision, the judge stated that he had read some older case law holding that lack of mental capacity could be a defense to the charge of leaving the scene of an accident. Appellant's trial counsel objected, expressing concern that the jury would mistakenly apply the instruction to absolve the prosecution of its burden to prove the element that Appellant knew or should have known from all the circumstances of the injury or death to a person due to the accident. Counsel believed the jury might not understand that the court's intent was that it should apply the instruction to the willfulness element, i.e., willful failure to stop at the scene of the crash and willful failure to render reasonable assistance. Counsel asked the court to edit the instruction to state that it should be applied only to the element of willfulness. The court overruled the objection and gave the standard voluntary intoxication instruction.

During closing arguments, the prosecutor noted that there are two major universities in Tallahassee and argued, "There are mopeds everywhere. It is not open season on mopeds." Appellant's trial counsel made a golden rule objection, which was sustained, but he did not request a mistrial. The prosecutor continued directly afterwards, stating, "We have mopeds everywhere in this city." And then the prosecutor stated that the defense had hired its two experts for $13,000 as a "Hail Mary pass," the same people that they had hired "time and time again," to opine that the accident was unavoidable. Appellant's objection that this was an improper comment on defense strategy was overruled. Later, during the rebuttal portion of closing arguments, the prosecutor stated that if the jury found that "even one or less than one [percent] of this

3

wreck was caused by [Appellant] . . . he's guilty." The defense did not object to this statement. Later, the prosecutor also argued that Appellant's theory of defense that the accident was unavoidable was "ludicrous" as Appellant blood alcohol level was over three times the legal limit. The defense also did not object to this statement.

During deliberations, the jury sent a question to the court asking, "Can you cause or contribute to an accident that is unavoidable?" The jury also asked the court to "clarify . . . if you can't answer directly" what "contribute" means in the context of the element of the DUI charges that by reason of operating a motor vehicle while impaired, the defendant "cause[d] or contribute[d] to causing" death or serious injury. Over defense objection, the court answered, stating:

> "Dear jurors, I can't answer your primary question, because it asks me to apply the facts to the law. I have told you that applying the facts to the law is your job. However, you go on to ask me to clarify, quote, contribute, end quote, if I can't directly answer your first question. On page 1, element three, the Court uses the phrase contributed to the cause of death" – and that's in quotes – "quote, contributed to the cause of death, three little dots, end quote. There is no special legal definition for, quote, contributed to. It should be defined in the same way you use it in everyday life. It means to have some part in the cause of death as result of operating a vehicle. I hope this answers your question."

The jury found Appellant guilty of DUI manslaughter, DUI causing injury, leaving the scene of a crash involving death, and leaving the scene of a crash involving injury. The trial court dismissed the count of leaving the scene of a crash involving injury on a double jeopardy issue. Appellant was sentenced to 15 years in prison for DUI manslaughter and leaving the scene of a crash involving injury, and he received a time served sentence for DUI causing injury. The Court affirmed the conviction and sentence on direct appeal without opinion.

4

Appellant filed a postconviction motion in the sentencing court arguing that his trial counsel was ineffective on several grounds, including failure to adequately object to some of the prosecutor's comments in closing argument and failure to seek a mistrial concerning the sustained golden rule objection, as well as failure to object to the inclusion of the voluntary intoxication instruction on the basis that all the charges involved general intent crimes. At the postconviction hearing, Appellant's trial counsel testified that he would normally object to the giving of the voluntary intoxication for DUI offenses as they are not specific intent crimes. Counsel gave no explanation for why he did not do so in this case. The postconviction court denied the motion. Appellant now appeals.

To prove ineffective assistance of counsel, a defendant must allege (1) the specific acts or omissions of counsel which fell below a standard of reasonableness under prevailing professional norms and (2) that the defendant's case was prejudiced by these acts or omissions. *Strickland v. Washington*, 466 U.S. 668, 690–94 (1984). Under the first prong, "[t]he defendant must allege specific facts that . . . demonstrate a deficiency on the part of counsel which is detrimental to the defendant*." Blackwood v. State*, 946 So. 2d 960, 968 (Fla. 2006) (quoting *LeCroy v. Dugger*, 727 So. 2d 236, 239 (Fla. 1998)). The prejudice prong requires that the defendant demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The defendant must show a likelihood of a different result which is substantial and not just conceivable. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). If the defendant fails to satisfy one prong of the *Strickland* analysis, it is not necessary to consider the other prong. *Waterhouse v. State*, 792 So. 2d 1176, 1182 (Fla. 2001).

Appellant has not met his burden of showing ineffectiveness under the facts of this case.

AFFIRMED.

M.K. THOMAS and TANENBAUM, JJ., concur.

5

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Glen P. Gifford, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Benjamin L. Hoffman, Assistant Attorney General, Tallahassee, for Appellee.